UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA :

-v- :

TAI NGUYEN, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12 Cr. 495 (NRB)

**GOVERNMENT'S SENTENCING MEMORANDUM**

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States of America

David I. Miller
Assistant United States Attorney
- Of Counsel -



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York 10007*

March 11, 2013

**BY ECF FILING AND BY HAND**

Honorable Naomi Reice Buchwald
United States District Court Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: United States v. Tai Nguyen, 12 Cr. 495 (NRB)**

Dear Judge Buchwald:

The Government respectfully submits this letter in connection with the March 14, 2013 sentencing of defendant Tai Nguyen (the "defendant" or "Nguyen"). As set forth herein, the Government believes that a sentence within the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range of 46-57 imprisonment is reasonable and appropriate given the nature and seriousness of the offense. Furthermore, as discussed below, a sentence within the Guidelines range is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

## FACTUAL BACKGROUND

### A. Relevant Facts[1]

Insight Research, LLC ("Insight Research") was an investment research firm that operated in northern California and Oregon, among other places. Insight Research purported to provide investment research services to its clients. These clients were money managers and hedge funds throughout the United States, including in New York, New York, whose principal purpose was to purchase and sell securities for profit. Insight Research primarily specialized in providing investment research about publicly-traded technology companies. In exchange for its research services, Insight Research received consulting fees from its clients, either through direct payments or indirectly through soft dollar payments, which are payments directed to Insight Research through its clients' trading activity.

An expert networking firm in Mountain View, California (the "Firm") operated as a private company that paid employees at publicly traded companies and other individuals ("Firm Consultants") to provide information to money managers, including hedge funds. These money managers' principal purpose was to purchase and sell securities for profit.

Abaxis Inc. ("Abaxis") was a biotechnology company headquartered in Union City, California, whose shares traded on the Nasdaq Stock Market (ticker symbol: ABAX). Abaxis's policies prohibited the unauthorized disclosure of Abaxis's confidential information.

*Relevant Individuals*

Nguyen was the President and sole employee of Insight Research. In that capacity, Nguyen conducted all research for Insight Research and was the principal interface with Insight Research's clients. In addition to operating Insight Research, Nguyen also was a paid consultant for the Firm.

An individual not named in this action was employed in the Finance Department of Abaxis (the "Abaxis Insider"). Nguyen was the brother of the Abaxis Insider. The Abaxis Insider owed fiduciary and other duties of trust and confidence to Abaxis and its shareholders, requiring that, among other things, the Abaxis Insider maintain the confidentiality of all material nonpublic information entrusted to the Abaxis Insider, including nonpublic financial results of the company.

---

[1] The information provided in the factual background discussed herein is derived from paragraphs 10-22 of the Presentence Investigation Report ("PSR").

Noah Freeman ("Freeman") was employed in the hedge fund industry. At certain relevant times, Freeman was employed as a research analyst at Hedge Fund A, a fund based in Boston, Massachusetts. Hedge Fund A was a client of Insight Research.

Samir Barai ("Barai") worked as a portfolio manager in the hedge fund industry, including at two separate hedge funds located in New York, New York: Hedge Fund B and Hedge Fund C. Barai caused Hedge Fund B and Hedge Fund C to pay Nguyen through the Firm and also directly through invoices from Insight Research.

*The Wire Fraud and Insider Trading Scheme*

From at least in or about 2006, through in or about mid-2009, Nguyen, Freeman, Barai, and others known and unknown, participated in a scheme to defraud by executing securities transactions based on material nonpublic information regarding Abaxis's quarterly financial results (the "Abaxis Inside Information") before such results were publicly announced by Abaxis. Specifically, Nguyen obtained from the Abaxis Insider detailed information about Abaxis's anticipated revenues, earnings, gross margins, and other financial results prior to Abaxis's quarterly announcement. The Abaxis Insider provided Nguyen such information in violation of the duties of trust and confidence that the Abaxis Insider owed to Abaxis and its shareholders.

After obtaining the Inside Information from the Abaxis Insider, on numerous occasions between 2006 and 2009, Nguyen provided the Abaxis Inside Information to Freeman, Barai, and others known and unknown at Hedge Fund A, Hedge Fund B, and Hedge Fund C. Nguyen explicitly informed Freeman, Barai and other co-conspirators that the information he provided regarding Abaxis was from a relative employed at Abaxis. As Nguyen well knew, the Abaxis Inside Information that he provided to his co-conspirators was obtained for the purpose of executing and causing others to execute securities transactions based, in whole or in part, on the Abaxis Inside Information.

For example, Nguyen engaged in the following overt acts that were charged in the Information:

- On or about January 26, 2006, Nguyen purchased approximately 3,000 shares of Abaxis stock shortly before Abaxis announced its quarterly financial results.

- In or about July 2006, Nguyen had a telephone conversation with Freeman during which Nguyen provided Freeman with Abaxis Inside Information.

- On or about January 3, 2007, Nguyen had an instant message communication with Barai, who was in New York, New York, during

which Nguyen provided Barai with Abaxis's nonpublic quarterly revenue results.

- On or about January 31, 2008, Nguyen sold short approximately 400 shares of Abaxis stock in advance of Abaxis's announcement of quarterly financial results on January 31, 2008.

Based on the Abaxis Inside Information provided by Nguyen, both Hedge Fund A and Hedge Fund C executed securities transactions in Abaxis stock prior to the public announcement of Abaxis's quarterly financial results. As a result of the trading in Abaxis stock based on tips from Nguyen, including the Abaxis Inside Information, Hedge Fund A earned more than $4.5 million between July 2006 and May 2009, while Hedge Fund C earned over $1.7 million between July 2008 and September 2009.

In addition, on numerous occasions between 2006 and 2009, Nguyen traded Abaxis stock in his personal brokerage account after obtaining the Abaxis Inside Information from the Abaxis Insider. As a result of Nguyen's own trading activity, Nguyen earned over $147,000 between January 2006 and August 2009.

In exchange for the Abaxis Inside Information, Hedge Fund A, Hedge Fund B, and Hedge Fund C paid Insight Research and/or Nguyen consulting fees of several thousand dollars per month. Indeed, at various times, Insight Research earned consulting fees of more than $15,000 a month from just one of these hedge fund clients.

**B. <u>Nguyen's Guilty Plea</u>**

On June 26, 2012, Nguyen surrendered to the Federal Bureau of Investigation ("FBI"), was presented before this Court, and immediately pled guilty to Information 12 Cr. 493 (NRB) (the "Information"). (PSR ¶ 4). The Information charged Nguyen with one count of conspiracy to commit wire fraud and securities fraud, in violation of 18 U.S.C. § 371. (PSR ¶ 2).

## APPLICABLE LAW

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States v. Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States v. Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005). In furtherance of that goal, a sentencing court is required to "consider the Guidelines

'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 259-60 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose, whether it be a Guidelines or non-Guidelines sentence. *Id.* at 113. In so doing, it is entirely proper for a judge to take into consideration his or her "own sense of what is a fair and just sentence under all the circumstances." *United States v. Jones*, 460 F.3d 191, 195 (2d Cir. 2006).

**DISCUSSION**

As discussed below, the Government respectfully submits that after applying the sentencing factors to Nguyen's conduct, a Guidelines sentence is clearly warranted. While the Probation Office has recommended a sentence – 30 months' imprisonment – below the stipulated Guidelines range (*see* PSR Add. at 22-23), for the reasons set forth below, the Government disagrees with the Probation Office's assessment.

**A. Application of the Sentencing Guidelines**

Because the offense of conviction is related to insider trading, Section 2B1.4 of the Guidelines determines the applicable offense level. Under Section 2B1.4, its cross-reference to Section 2B1.1, and including applicable Chapter Three adjustments, the defendant's offense level is calculated as follows: the base offense level is eight (§ 2B1.4(a)); because the gain resulting from the offense exceeded $2,500,000 but did not exceed $7,000,000, the base offense level is increased by 18 offense levels (§ 2B1.1(b)(1)(J)); and because the defendant accepted responsibility for his criminal conduct, as reflected by his guilty plea, a three-level reduction is warranted (§ 3E1.1). (PSR ¶¶ 33-39). Nguyen's total offense level is thus 23. (PSR ¶ 42).

Nguyen has no prior criminal convictions and thus is in Criminal History Category I. (PSR ¶¶ 44-46). Accordingly, Nguyen's Guidelines sentencing range is 46 to 57 months' imprisonment. (PSR ¶ 79).

The sentencing range calculated by the Probation Office mirrors the range to which Nguyen stipulated as a reasonable sentence in his plea agreement. (*Compare* PSR ¶ 5(g) *with* ¶ 79). Although no longer binding upon the Court, a Guidelines sentence in this case appropriately reflects the seriousness of Nguyen's offense, and is entirely reasonable in light of Nguyen's criminal conduct.

**B. The Section 3553(a) Factors**

**1. Nature and Circumstances of the Offense**

Nguyen and his co-conspirators committed a significant insider trading offense. At the time he committed his crime, Nguyen was an experienced financial professional. He conspired with talented portfolio managers who were privileged to have graduated from this country's best schools. Together, they attempted to cheat the system and gain an unfair advantage over the average investor by obtaining the Abaxis Inside Information from the Abaxis Insider in order to maximize their investment profits, and in turn, line their own pockets. Indeed, the Abaxis Inside Information was detailed information about Abaxis's financial results obtained and used prior to Abaxis's quarterly announcement. Through their actions during the 2006-2009 time period,

Nguyen and his co-conspirators knowingly, willfully, and repeatedly broke the law. Additionally, because of Nguyen's actions, he not only profited handsomely, Hedge Funds A and C made substantial gains.[2]

Insider trading constitutes a violation of the Securities and Exchange Act of 1934. A fundamental purpose of that statute is to ensure fair dealing and outlaw deceptive and inequitable practices in the securities markets. Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market. Insider trading causes that harm – namely by undermining the public's confidence in the capital markets, and by suggesting to ordinary investors that they should not invest because those markets are rigged in favor of well-connected professionals like Nguyen, Barai, and Freeman. The integrity of the markets is critical to the functioning of the nation's economy, which depends upon well-functioning markets for liquidity and access to capital. Not only did Nguyen's crimes harm the integrity of the markets, they harmed a public company whose business secrets Nguyen and his hedge fund co-conspirators stole for their own benefit. When financial professionals like Nguyen repeatedly and brazenly flout the law, they must be punished accordingly.

Indeed, contrary to the PSR's suggestion that his actions were "aberrant" (PSR Add. at 23), Nguyen fed the Abaxis Inside Information to Barai and Freeman over a multi-year period. Nguyen's conduct was not some momentary lapse in judgment, nor a set of circumstances that spiraled out of his control. It was a serious, systematic crime that warrants punishment. Accordingly, the nature of Nguyen's conduct weighs heavily in favor of a sentence within the stipulated Guidelines range.

**2. <u>History and Characteristics of the Defendant</u>**

Nguyen's history and characteristics also support a Guidelines sentence in this case. In this case, while Nguyen has no prior convictions, Nguyen's criminal conduct was not an isolated act. His conduct was executed over a long duration. Furthermore, Nguyen put his family in jeopardy because of his own financial situation by involving them in his insider trading scheme. While Nguyen appears to have had a difficult childhood, as described in the PSR and the

---

[2] In justifying a below-Guidelines sentencing recommendation, the PSR states that Nguyen's Guidelines range was largely driven by the total gain increase for the conspiracy while Nguyen's personal gain "was a fraction of that amount, at about $400,000." (PSR Add. at 23). While Nguyen's crime may have benefitted his co-conspirators more than it benefitted Nguyen personally, Nguyen is properly held to account for the overall conspiracy gain. It was because of Nguyen's actions that there was a multi-million dollar gain to the conspiracy. Further, it is established law that a conspirator is responsible for those foreseeable acts, and illegal benefits, of his co-conspirators.

Defendant's submission, this is true of many other individuals who do not resort to fraud to support their livelihood. Notably, Nguyen appears to have had a very supportive, close-knit family – the kind of family and support that many other defendants do not have while they engage in criminal conduct – and he still chose to jeopardize them and engage in his criminal activities. The Government submits that Nguyen's history and circumstances are not extraordinary and militate in favor of a Guidelines sentence.

**3. Need to Afford Adequate Deterrence**

Under Section 3553(a), the need for a sentence to "afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), must also be considered. A stiff sentence is warranted here to deter Nguyen and other financial professionals from engaging in insider trading.

Because insider trading schemes are both highly lucrative and difficult to detect, significant punishment is necessary to deter others from similar conduct. *See United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expedited benefits of a crime and hence the punishment required to deter it."). Should Nguyen receive a light sentence, financial professionals may be emboldened to engage in similar crimes, knowing that such schemes are difficult to detect and that even if they are caught, they will not face much time in jail. In addition, such a sentence would further shake the public's integrity in the markets by sending the message to the investing public that even when financial professionals are caught engaging in an extensive insider trading conspiracy, they are only lightly punished. To deter criminal conduct by professionals like Nguyen, effectuate the purpose of the securities fraud laws, and send an appropriate message that this type of fraud will not be countenanced, a sentence within the Sentencing Guidelines range is warranted.

**4. Need to Avoid Unwarranted Sentencing Disparities**

Under 18 U.S.C. § 3553(a)(7), the Court should consider the "need to avoid unwarranted sentencing disparities." Nguyen obtained and used the Abaxis Inside Information from his family member and provided it to hedge fund professionals to trade. Nguyen was thus a key part of the conspiracy. In light of the fact that Nguyen was the instrument without which no crime would have occurred, and given the substantial nature of the insider trading involved in the conspiracy, a Guidelines sentence would simply not implicate any "unwarranted" disparity with respect to other defendants convicted of insider trading.

In his submission, Nguyen argues that other defendants that are not "fairly comparable" to Nguyen (presumably more culpable), like James Fleishman and Donald Longueuil, got sentences below Nguyen's Guidelines range (*see* Defendant's Submission ("Def. Sub.") at 8-9), and thus it

would impose an unwarranted sentencing disparity on Nguyen to impose a similar or greater sentence than they. Further, Nguyen argues that other defendants who are punished for insider trading are – purportedly unlike Nguyen – engaged in conduct "in pursuit of immense personal gain." (Def. Sub. at 4). These arguments fail.

Section 3553(a)(6) addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a) "'does not require district courts to consider sentencing disparity among co-defendants,'" because "the primary purpose" of section 3553(a)(6) "was to minimize nationwide disparities." *United States v. Wills*, 476 F.3d 103, 110 (2d Cir. 2007) (citation omitted; emphasis added), *abrogation on other grounds recognized by Cavera*, 550 F.3d at 191; *accord United States v. Williams*, 524 F.3d 209, 215 (2d Cir. 2008); *cf. United States* v. *Florez*, 447 F.3d 145, 157-58 (2d Cir. 2006) ("if sentencing disparities . . . are properly considered, the weight to be given such disparities, like the weight to be given any § 3553(a) factor, 'is a matter firmly committed to the discretion of the sentencing judge and is beyond our [appellate] review, as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented'" (quoting *Fernandez*, 443 F.3d at 32)). Because Section 3553(a)(6) is just one of several factors to be weighed by the sentencing court, identification of a sentence disparity does not mandate a downward adjustment from the Guidelines range. *See United States v. Florez*, 447 F.3d at 157-58. Consequently, in *United States v. Johnson*, 505 F.3d 120, 124 (2d Cir. 2007), this Court described as "unavailing" the defendant's claim that the district court had erred by "failing to take into account the lower sentence received by his co-defendant."

Nguyen's numerical comparison against allegedly more culpable defendants is an apples-to-oranges comparison. Specifically, Nguyen focuses on Fleishman's and Longueiul's cases, in which they were each sentenced to 30 months' imprisonment, as militating in favor of a non-Guidelines sentence below 30 months for Nguyen. While Fleishman and Longueiul did receive non-Guidelines sentences, the Government did pursue Guidelines sentences of 87-108 months for Fleishman and 46-57 months for Longueiul. Further, Nguyen's case and facts are very different than Fleishman's and Longueiul's, and are more similar to Winifred Jiau's – and thus more accurately compared to hers. *See United States* v. *Winifred Jiau*, 11 Cr. 161 (JSR). Like Nguyen, Jiau acted as a conduit of inside information to Freeman and Barai. Jiau provided material non-public information that she received from insiders at Marvell and NVIDIA to Freeman and Barai during the 2006-2008 time period. Because of Jiau's information, Hedge Fund A avoided approximately $2.2 million in losses, and Hedge Fund C reaped approximately $865,000 in profits. Jiau's trading profits were actually less than $8,000, although she did earn over $200,000 in consulting fees from PGR. Notably, these profits/avoided loss numbers are far lower than in Nguyen's case. Yet, Jiau's Guidelines range was actually higher (because of enhancements) than Nguyen's – 78-97 months – and Judge Rakoff imposed a 48-month

sentence.[3] This sentence was imposed even though Jiau was not one of those "experienced and wealthy Wall Street insiders" who reaped "immense personal gain," to which Nguyen refers. (Def. Sub. at 4). Indeed, Judge Rakoff's sentence for Jiau, which was higher than that imposed for Fleishman or Longueiul, shows the difficulty in merely comparing the numbers of months imprisonment imposed among insider trading defendants – they must be evaluated based on their own personal circumstances and crimes.

For the aforementioned reasons, the Government submits that while Nguyen's activities were not as extensive as certain other insider-trading defendants, a Guidelines sentence is still appropriate because of all the other factors set forth herein.

## CONCLUSION

For the reasons set forth above, the Government respectfully submits that Nguyen has committed a serious offense that is appropriately penalized in the Guidelines. Accordingly, the Government requests that the Court impose a sentence within the applicable Guidelines range of 46 to 57 months' imprisonment, as it is sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: __________/s/___________________
David I. Miller
Assistant United States Attorney
Tel.: (212) 637-2484

cc: David Wikstrom, Esq. (by e-mail).

[3] Jiau has appealed her trial conviction and sentence. *See United States* v. *Winifred Jiau*, 11-cr-4167(L) and 12-2222(CON).